May it please the Court, my name is Elisa Brazil, I'm from the Law Offices of Kaiser and Capecce and I'm representing Petitioner, Mr. Sanjeev Dittal in these proceedings today. Although there are several issues that Petitioner has presented for the Court to consider, there are two very significant issues in this case and I'd like to address both of those today. The first issue has to do with whether or not Mr. Dittal received notice of the very severe consequences of filing a frivolous asylum application and I believe that this is an issue of first impression for this Court. In addition to that, the other significant issue also has to do with the denial of the Convention Against Torture claim on the basis that the immigration judge's adverse credibility finding is dispositive of the Convention Against Torture claim itself. Sotomayor, what's the what's your client's explanation for having first filed for asylum based on persecution in Bhutan? That's correct, Your Honor. And being granted? That's correct. He was granted by the immigration judge. And then filing this petition saying he would be persecuted because he's a native and citizen of Nepal? The first application was filed in April of 2001 and it was a fabricated application which Mr. Dittal has conceded and he admits that it was a fabricated application. So that's not at issue. Why is it not an issue here? Well, it's not at issue. It is at issue because the judge deemed that it was a frivolous asylum application. But what's really at issue is whether or not Mr. Dittal received notice that if he filed such a frivolous application that he would be forever barred from receiving any benefits under the Immigration Nationality Act. Well, didn't he receive at least two written notices, one in the application and one in the oath that he signed for the asylum hearing? Well, he did. There is in the record, there is an oath record that was something that was signed that was created at the asylum officer interview in 2001 and that asylum office, that oath record only stated, this is found at page 347 of the administrative record. It was exhibit 6 in the proceedings. I also understand that if I file my asylum application on or after April 1, 1997, I shall be permanently ineligible for any benefits under the Immigration Nationality Act if I knowingly file a frivolous application for asylum. That's the only warning contained in the oath record. And the reason- What's wrong with that warning? What's wrong with it? The reason, well, there are several things wrong with it. But number one, it doesn't explain at all what the meaning of frivolous is. And this is directly at odds with the BIA's decision in matter of Y-L-, which was decided after the dismissal of Mr. Dittal's claim. Is it your position that all written waivers or acknowledgments are ineffective unless the IJ actually makes an oral admonition? Yes, that is our argument. And the basis for that, well, there's several basis. There's three main arguments as to why the oath record itself should not stand at sufficient notice under the meaning of INA section 208 D4. His name is, your client's name is Sanjib Dittal. Dittal, that's correct. And the Bhutanese application he filed was under the name of Pugman Sharma? That is correct. A completely fictitious name. It was completely fictitious. He used- He's never been in Bhutan. I'm not sure if he's ever been there, but he was- He certainly wasn't prosecuted. There is not a native or a citizen of Bhutan. He is not a native or a citizen of Bhutan. And that was a fabricated claim, which he admitted to in 2004 when he filed his second application before the same immigration judge that actually denied the fictitious claim. But getting back to the issue of notice, there's three main reasons why the oath record itself should not stand at sufficient notice. The first one has to do with the BIA's rationale in matter of Y-L-, which is the most recent decision the BIA has issued. And it's a precedent decision regarding frivolous asylum applications. Although matter of Y-L- doesn't specifically address the issue of the notice requirement, it does state at page 155 of that decision that in this case, in that case, in matter of Y-L- the petitioner had received adequate notice because the requisite warnings had been given by the immigration judge. And when it discusses what the requisite warnings are, in a footnote, in footnote number two, it actually contains the language that the immigration judge gave in immigration court regarding notice. And besides just advising of the consequence of the permanent ineligibility for future benefits, the warning also states a frivolous application for asylum is one which contains statements or responses to questions that are deliberately fabricated. Now this is a very important point, because as the BIA points out in the same decision, the term frivolous is not really a very good term for describing what is really being considered, which is a fraudulent asylum application. In fact, in footnote number one, the BIA says that the term fraudulent may be more appropriate than the term frivolous. And then it goes on to say that frivolous generally means insignificant, trivial, silly, or gay. It does not mean fraudulent. So what Mr. Sanjeev Dittal received at the asylum office does not explain what frivolous means at all. So- Wouldn't one ordinarily understand that a fraudulent application, and so fraudulent that it has no merit, is frivolous? I don't think that one does automatically think that, because the meaning frivolous, frivolous does not mean fraudulent. So it's kind of a deceptive term that's used. And the purpose of the warning in immigration court is that that warning actually explains what it means to file a frivolous application. The immigration judge tells the applicant that a frivolous asylum application is one that is fabricated and contains facts that were fabricated in our material to the asylum application. But at the asylum office, that does not happen. And so the BIA's own rationale in matter of Y-L- is at odds with their rationale why they accepted the oath record as sufficient, as substantial evidence that Mr. Dittal actually receives a notice requirement. In addition to that, in Singh versus Gonzalez, which is a 2005 decision of this court, this court did not uphold an immigration judge's adverse credibility finding based on an assessment to refer that was produced at the asylum office. Because this court found that that document produced at the asylum office cannot be held up in a judicial proceeding as reliable evidence. Because it's recreated in a quasi-administrative setting. The asylum office is not a judicial proceeding. It's very informal. And there's no record created at the asylum office of what actually happens there. So this court- Counsel, I think we understand your argument on that point. Okay. We don't have to get to that issue, though. If we decide on the merits of the claim that there was substantial evidence to support the denial of asylum here, do we not? Well, Your Honor, that is an issue in this case because the immigration judge never actually reached the substantive claim of Mr. Dittal's second asylum application. Because he found that the first one was frivolous, he also found that Mr. Dittal's entire testimony regarding the second asylum application was not credible. But he only based that assessment- Isn't that enough? Well, no, Your Honor. That should not be enough. That should not be enough. It certainly should be a factor that is considered. No doubt about it. The judge has to consider what happened- Our test is substantial evidence in the record as a whole to sustain the conclusion reached by the IJ. I know, Your Honor. There is not, because the immigration judge did not analyze at all the second asylum application. He did not analyze Mr. Dittal's demeanor. Mr. Dittal appeared before him at least on two separate individual hearings for testimony. For both applications. Well, actually, just for the second application, but for the first one, then it would probably be at least three individual hearings. He did not assess his demeanor during the second proceeding. He did not compare at all the substance of the asylum application to the declaration, to the oral testimony given at the hearing. He didn't discuss any discrepancies or omissions. So he didn't give an independent evaluation of the second claim and only found that that based on the fact that Mr. Dittal had already filed a fabricated asylum application in 2001. Why wasn't the IJ entitled to say, fool me once, shame on you. Fool me twice, shame on me. That is in essence what the immigration did say. However, I think it's fine that he would say that, but I think that he also had to evaluate the second claim. Because if the second claim, if it is true, then Mr. Dittal may be harmed if he has to return to Nepal. So it's a very serious issue. And the judge should have considered it. All right. Thank you, counsel. Your time has expired. Thank you very much. Thank you. We'll hear from the government. May it please the Court, Sarah Maloney for the Respondent. The record evidence doesn't compel reversal of the agency's denial of Mr. Dittal's second withholding application for lack of credibility. Do we have to read this question of the notice if we go to the merits? The notice issue goes to whether Mr. Dittal's first asylum application was frivolous. And the so yes, it is separate and distinct from the adverse credibility finding. Which is supported by substantial evidence because the agency based its adverse credibility finding on the fact that the first application was wholly inconsistent with the second application, and Mr. Dittal was provided an opportunity to explain the inconsistencies and or to provide an explanation for his deliberate falsification of the first application, and his explanation was unconvincing. My question really is to this notice issue that your opposing counsel spent almost all of our time arguing. Well, the agency do we have to get to that issue if we go to the merits of the IJ order? Well, if there is a frivolous finding on this particular alien's record, he is the statute under the statute. He is borrowed from former immigration benefits. In the future, if he plans, if he wishes to, for instance, apply for a visa to return to come back to this country, perhaps under this, under the statute on a frivolous finding, he might not be able to. He might be barred. The IJ found that his, the current petition was also untimely. Did the BIA address that? Yes. The BIA denied that, the current, the second application, for untimeliness because it found that. It was more than one year after the It was well beyond one year. He entered in 1998, and he didn't file this application until late 2004. Similarly to Judge O'Scanlan's question, do we need to address the issue of whether there are extraordinary circumstances here if we just go to the merits? For the second asylum application, no. That, the adverse credibility determination, because it's supported by substantial evidence, effectively renders his second asylum application moot, because that adverse credibility finding would extend to the asylum application to the extent it's the same factual basis, which cannot be believed. So the Court need not necessarily reach the untimeliness issue on the second application. Including the issue of extraordinary circumstances. Precisely. Okay. Anything further, counsel? No. Thank you. The case just argued will be submitted for decision, and the Court will adjourn. All rise. Hearing, hearing, all persons having had business with the Honorable Dean of the State plan added to the matter. The matter is hereby overturned by the S supermarket. And now the Court will discard the motion for adjournment
judges: O'scannlain, Hawkins, Selna